# UNITED STATED DISTRICT COURT
# IN THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE NINO, SANDRA SION, and JOSEPH WAWROCKI, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs<br><br>vs<br><br>CNBC LLC<br><br>Defendant. | CASE NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiffs George Nino, Sandra Sion, and Joseph Wawrocki, by and through their attorneys, Liddle Sheets Coulson P.C., for their Complaint against Defendant CNBC LLC ("**Defendant**") state as follows:

## INTRODUCTION

1. Plaintiffs, on behalf of themselves and all others similarly situated ("**Plaintiffs**"), bring this class action in relation to Defendant disclosing Plaintiffs' personally identifiable information ("**PII**") without Plaintiffs' consent.

2. Plaintiffs are subscribers of Defendant's website, cnbc.com (the "**Website**"), which offers, *inter alia*, a wide array of prerecorded video content.

3. When Plaintiffs watched prerecorded videos on cnbc.com, Plaintiffs' PII was shared with Facebook without notifying Plaintiffs and without Plaintiffs' consent.

4. Defendant violated the Video Privacy Protection Act, 18 U.S.C. § 2710 (the "**VPPA**") each time it knowingly disclosed Plaintiffs' PII to Facebook without consent.

5. Defendant is liable to Plaintiffs for statutory damages in an amount not less than $2,500 for each disclosure of PII, punitive damages, and attorneys' fees and costs.

**PARTIES**

6. Plaintiff George Nino is an individual over 18 years old and a citizen of the State of California. Plaintiff is a subscriber of cnbc.com and has watched prerecorded videos on the Website.

7. Plaintiff Sandra Sion is an individual over 18 years old and a citizen of the state of California. Plaintiff is a subscriber of cnbc.com and has watched prerecorded videos on the Website.

8. Plaintiff Joseph Wawrocki is an individual over 18 years old and a citizen of the State of Illinois. Plaintiff is a subscriber of cnbc.com and has watched prerecorded videos on the Website.

9. Defendant CNBC, LLC is a Delaware corporation with its principal place of business in New York.

**JURISDICTION AND VENUE**

10. This Court has jurisdiction pursuant to the Class Action Fairness Act ("**CAFA**"), 28 U.S.C. § 1332(d) in that the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs, there are at least 100 members of the proposed class, and at least one member of the class is a citizen of a different state than Defendant.

11. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because the action arises under a law of the United States, namely the VPPA.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant does significant business in this District, its principal place of business is in this District, and by

its terms of service it has agreed that "the state or federal courts in New York shall have exclusive jurisdiction over the dispute" and that the "relationship between Plaintiffs and Defendant shall be governed by the laws of the U.S. and the State of New York."

## GENERAL ALLEGATIONS

13. Defendant is a media publisher that developed, owns, and/or operates the Website, which receives millions of visits per year.

14. In addition to written articles, the Website provides a wide array of prerecorded video content.

15. Defendant has thousands of website subscribers who, *inter alia*, watch prerecorded videos on the Website.

16. To subscribe to Defendant's website, individuals click a link (located next to "Sign In") entitled "Create Free Account." Users are then enticed to create an account for the benefits of "mak[ing] watchlists, follow[ing] your favorite stocks and make more informed trades." In exchange for those purported benefits, Defendant notes that "[t]he information you provide when you create an account may be shared with other NBCUniversal businesses and used to help us better tailor our services, products, and advertising to you. As part of our account we may send you newsletters, promotions, and other marketing material."

17. The subscription process requires new subscribers to provide their email address and a password. At the same time, Defendant collects the user's IP address and other information as alleged herein.

18. As reflected above, the subscription process is not a mere newsletter signup. It is the creation of an account to be used across Defendant's website, which requires subscribers to exchange their personal information in exchange for certain advertised benefits.

19. Many subscribers, including Plaintiffs, have a Facebook account.

20. Facebook "require[s] people to connect on Facebook using the name that they go by in everyday life,"[1] such that a person can be personally identified by their Facebook account.

21. When someone creates a Facebook account, a corresponding Facebook ID ("**FID**") is also created.

22. FIDs are uniquely associated with particular Facebook accounts, such that an FID can be used to identify and view the associated Facebook profile.

23. When someone becomes a subscriber to Defendant's Website, they receive emails from Defendant with links to articles and videos published on the Website.

24. Defendant monetizes its Website by knowingly collecting and disclosing its subscribers' PII to Facebook, namely data that personally identifies subscribers and the videos they view.

25. Defendant's Website uses a code analytics tool called "Facebook Pixel," which was implemented at the discretion of Defendant.

26. Facebook Pixel tracks the actions of Website subscribers, such as each page a visitor accesses and the content they view.

27. When someone watches a video on Defendant's Website, the URL of the page on which the video is located and the viewer's FID are simultaneously sent to Facebook via Facebook pixel. The specific video viewed by the subscriber is disclosed both by virtue of the fact that it is part of the URL and because any person could simply enter the URL into a web browser to identify any video content on the page.

---

[1] https://transparency.fb.com/en-gb/policies/community-standards/account-integrity-and-authentic-identity/ (accessed May 31, 2023).

28. The video name/description and FID are sent to Facebook together and at the same time as a single piece of data.

29. For example, when a video is accessed, the name and viewer's FID, which is represented by the "c_user" cookie are sent to Facebook.

30. Defendant, via Facebook Pixel, discloses to Facebook the URL and video name that the viewer has accessed.

31. The "c_user" cookie that is transmitted contains the viewer's unencrypted FID.

32. A Facebook profile can be identified and viewed by appending an FID to the end of "Facebook.com," such that a person is identifiable by their FID.

33. When a URL, video name/description, and an FID are simultaneously disclosed that information indicates the video material accessed by a specific individual, thus constitutes PII.

34. Defendant knew that URLs, video name/descriptions are simultaneously disclosed by Facebook Pixel.

35. Defendant also knew that such combined data identifies Website users and the videos they watched.

36. Defendant did not obtain the consent of Website users to disclose their PII.

37. Website users are not given an opportunity to withdraw from or prohibit the disclosure of their PII or the video content they view.

38. The disclosure of the Website subscriber's PII and/or the video content they view is not incident to the ordinary course of business of Defendant (i.e., it is not for debt collection, order fulfillment, request processing, or transferring of ownership).

39. The surreptitious disclosure of PII (i.e., an individual's FID paired with a URL and the name/description of video content they view) is an outrageous invasion of privacy and would be offensive to a reasonable person.

### The Video Privacy Protection Act

40. In recognition of the risk of invasions of privacy, Congress passed the VPPA so that individuals can "maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers." S. Rep. No. 100-599, pg. 8.

41. The VPPA provides that a "video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided in subsection (d)." 18 U.S.C. § 2710(b)(1).

42. Under the VPPA, "the term 'video tape service provider' means any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio-visual materials…" 18 U.S.C. § 2710(a)(4).

43. An entity that provides videos via streaming is a video tape service provider under the VPPA.

44. Under the VPPA, "the term 'consumer' means any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

45. Under the VPPA, "the term 'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).

46. Where a video tape service provider knowingly discloses the PII of a consumer without consent, the aggrieved person may bring a civil action for, *inter alia*, statutory damages in

an amount not less than $2,500, punitive damages, attorneys' fees and costs. 18 U.S.C. § 2710(c)(2)(A)-(D).

## PLAINTIFFS/PROPOSED CLASS REPRESENTATIVES

47.     Plaintiffs are subscribers of Defendant's Website, cnbc.com.

48.     Plaintiffs have each watched countless videos on Defendant's Website.

49.     Plaintiffs have had Facebook accounts at all times since subscribing to cnbc.com, which they are perpetually logged into during their web browsing activity.

50.     In order to become subscribers, Plaintiffs provided Defendant with their email addresses.

51.     Plaintiffs' Facebook profiles contain their names, whereby Plaintiffs can be personally identified by that information.

52.     Since becoming subscribers, Plaintiffs have regularly watched videos on cnbc.com using the same device and/or browser in which they are logged into their Facebook accounts.

53.     Each time Plaintiffs watched a video on cnbc.com, Defendant simultaneously disclosed Plaintiffs' FIDs and the URL/name of the content they viewed on Facebook via Facebook Pixel. This information was simultaneously transmitted.

54.     This paired information personally identifies Plaintiffs and the video material that they requested, obtained, accessed, and/or watched on cnbc.com.

55.     Plaintiffs did not consent to the disclosure of their PII, in writing or otherwise, and Defendant did not attempt to obtain Plaintiffs' consent in a form separate and distinct from other legal obligations.

56. Defendant did not provide Plaintiffs with an opportunity to withdraw from the disclosure of their PII.

57. Defendant's disclosure of Plaintiffs' PII was not related to an ordinary course of business (e.g., debt collection, order fulfillment, request processing, or any transfer of ownership).

## CLASS ACTION ALLEGATIONS

A. **Definition of the Class**

58. Plaintiffs bring this action individually and on behalf of all persons that the Court may determine appropriate for class certification, pursuant to Fed. R. Civ. P. 23 (the "**Class**" or "**Class Members**"). Plaintiffs seek to represent a Class of persons preliminary defined as:

> **All persons in the United States who have a Facebook Account, subscribed to Defendant's Website, and watched one or more video on the Website.**

This definition is subject to modification as discovery discloses further information. Plaintiffs reserve the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

59. This case is properly maintainable as a class action pursuant to and in accordance with Fed. R. Civ. P. 23 in that:

   a. The Class, which includes hundreds of members, is so numerous that joinder of all members is impracticable;

   b. There are substantial questions of law and fact common to the Class, including those set forth in greater particularity herein;

   c. Questions of law and fact which are all common to the Class predominate over any questions of law or fact affecting only individual members of the Class;

   d. The claims of the representative Plaintiffs are typical of the claims of the Class;

   e. A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

    f.      The relief sought in this class action will effectively and efficiently provide relief to all members of the Class;

    g.      There are no unusual difficulties foreseen in the management of this class action; and

    h.      Plaintiffs, whose claims are typical of those of the Class, through their experienced counsel, will zealously and adequately represent the Class.

B.    **Numerosity**

60.    There are thousands of individuals who are subscribers of Defendant's Website and have watched videos on the Website. Accordingly, the Class Members are so numerous that joinder of all parties is clearly impracticable.

C.    **Commonality**

61.    Numerous common questions of law and fact predominate over any individual questions affecting Class Members, including, but not limited to the following:

    a.      Whether Defendant collected PII of Class Members who visited its Website;

    b.      Whether Defendant disclosed PII of Class Members who watched videos on its Website;

    c.      Whether disclosure of PII via Facebook Pixel constitutes "knowing disclosure";

    d.      The nature and extent of PII disclosed;

    e.      How PII was disclosed and to whom;

    f.      Whether Defendant's Website obtain informed written consent before disclosing PII of subscribers;

    g.      Whether Defendant's Website provide a clear and conspicuous opportunity for subscribers to withdraw from disclosures on a case-by-case basis; and

    h.      Whether the disclosures of Class Members PII warrants punitive damages.

D.    **Typicality**

62. Plaintiffs have the same interest in this matter as all other members of the Class and their claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of substantially the same material and substantive facts, utilize the same complex evidence (e.g., expert testimony), rely upon the same legal theories, and seek the same type of relief.

63. The claims of the Plaintiffs and other Class Members have a common cause and their damages are of the same type. The claims originate from the synonymous disclosure of PII by Defendant without consent.

64. All Class Members have been aggrieved by Defendant's disclosure of their PII without consent and are entitled to, *inter alia*, statutory damages.

E. **Adequacy of Representation**

65. Plaintiffs' claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class's claims will be prosecuted with diligence and care by Plaintiffs as a representative of the Class. Plaintiffs will fairly and adequately represent the interests of the Class and they do not have interests adverse to the Class.

66. Plaintiffs have retained the services of counsel who are experienced in complex class action litigation. Plaintiffs' counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent the Plaintiffs and all absent Class Members.

F. **Class Treatment is the Superior Method of Adjudication**

67. A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

a. Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

b. Individual claims by Class Members would create a risk of inconsistent or varying adjudications, which would present the Defendant with incompatible standards of conduct;

c. Individual claims by individual Class Members would create a risk of adjudications which would, as a practical matter, be dispositive of the interests of other individuals who are not parties to the adjudications, or substantially impair or impede their ability to protect and pursue their interests;

d. Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

e. In view of the complexity of the issues and the expenses of litigation, the separate claims of individual Class Members are likely insufficient in amount to support the costs of filing and litigating separate actions;

f. Plaintiffs seeks relief relating to Defendant's common actions and the equitable relief sought would commonly benefit the Class as a whole;

g. The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and

h. The proposed class action is manageable.

## CAUSE OF ACTION I

**VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT,
18 U.S.C. § 2710**

68. Plaintiffs restate all allegations of this Complaint as if fully restated herein.

69. Defendant, through its Website, is engaged in the business of delivering audio visual materials (e.g., videos) to Plaintiffs and the Class in multiple states and across state borders. Thus, Defendant is a "video tape service provider" under the VPPA.

72. Plaintiffs and the Class are consumers under the VPPA because they are subscribers of Defendant, a video tape service provider, and have watched prerecorded videos on Defendant's Website.

73. When Plaintiffs and the Class watched videos on Defendant's Website, Defendant knowingly disclosed their FIDs and the URL/name of the video content that they viewed to Facebook via Facebook Pixel.

74. The disclosed information is PII because it personally identifies Plaintiffs and the Class, as well as the video content that each of those respective individuals viewed.

75. Plaintiffs and the Class did not consent to Defendant disclosing their PII.

76. Defendant did not provide an opportunity for Plaintiffs and the Class to withdraw from the disclosure of their PII.

77. Defendant's disclosure of Plaintiffs and the Class's PII was not in the ordinary course of business.

78. Defendant is liable to Plaintiffs and the Class for statutory damages of not less than $2,500 for each disclosure of their PII, punitive damages, attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

A. Certification of the proposed Class by order pursuant to Fed. R. Civ. P. 23;

B. Designation of the Plaintiffs as representatives of the proposed Class and designation of their counsel as Class counsel;

C. Judgment in favor of Plaintiffs and the Class Members as against the Defendant;

D. An award to each Plaintiff and Class Member for statutory damages not less than $2,500 and punitive damages, including pre- and post-judgment interest;

E. An award of injunctive relief prohibiting Defendant from disclosing the PII of its subscribers without consent and in accordance with the VPPA;

F. An award of attorneys' fees and costs, including pre- and post-judgement interest;

G. An Order holding that Defendant's disclosure of the Plaintiffs' and Class's PII without consent was in violation of the VPPA;

H. Such further relief that this Honorable Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure of all issues so triable.

Dated:   June 14, 2023

Respectfully submitted,

s/  Nicholas A. Coulson
Nicholas A. Coulson*
Livia Khemmoro*
*pro hac vice to be submitted
LIDDLE SHEETS COULSON P.C.
975 East Jefferson Avenue
Detroit, MI 48207-3101
T: (313) 392-0015
F: (313) 392-0025
E: ncoulson@lsccounsel.com
E: lkhemmoro@lsccounsel.com

*Attorneys for Plaintiffs and the Putative Class*