USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: __8/29/2024__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **NINO,** *et al.*, *individually and on behalf of all others similarly situated*, <br>                              **Plaintiffs,** <br><br> -against- <br><br> **CNBC LLC,** <br><br>                              **Defendant.** | **23-cv-05025** <br><br> **OPINION & ORDER** |

**ANDREW L. CARTER, JR., DISTRICT JUDGE:**

Plaintiffs George Nino, Sandra Sion, and Joseph Wawrocki bring this putative class action against Defendant CNBC LLC ("Defendant" or "CNBC") alleging that the Defendant unlawfully disclosed Plaintiffs' personally identifiable information ("PII") without their consent to Facebook and thereby violated the Video Privacy Protection Act, 18 U.S.C. §2710 ("VPPA"). Defendant has moved to dismiss the Complaint ("Compl."), ECF No. 1, in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(6). For the following reasons, Defendant's motion pursuant to Rule 12(b)(6) is **DENIED without prejudice** and Plaintiff's requested stay is **GRANTED**.

## BACKGROUND

### I. Factual Background

The following facts are taken from the allegations contained in the Complaint, which are presumed to be true for purposes of this motion to dismiss.

CNBC is a media publisher that developed, owns, and operates cnbc.com, which, in turn, offers a wide array of prerecorded video content. Compl. at ¶¶ 2, 13. The website receives millions of visits a day and Defendant has thousands of subscribers who watch videos on their site. *Id.* at ¶ 13-15. In order to subscribe to the website, individuals click a link entitled "Create Free

Account" and are notified of the benefits of creating an account. *Id.* at ¶ 16. These benefits include "mak[ing] watchlists, follow[ing] your favorite stocks and make more informed trades." *Id.* The site also discloses to account-holders that "[t]he information [they] provide when [they] create an account may be shared with other NBCUniversal businesses and used to help [Defendant] better tailor [their] services, products, and advertising . . . [and that] [a]s part of [their] account, [Defendant] may send [them] newsletters, promotions, and other marketing material." *Id.* Users are then required to enter in their email address and a password in order to create an account. *Id.* at ¶ 17.

Plaintiffs allege that CNBC shared information with Facebook using software called the "Facebook Pixel." *Id.* at ¶¶ 25. Facebook Pixel tracks the pages and content subscribers view on cnbc.com. *Id.* at ¶ 26. When viewing a video on the website, the site's URL as well as the user's "Facebook ID," a unique value associated with a user's individual Facebook account, are sent to Facebook via the Pixel. *Id.* at ¶¶ 21, 27. The user's video viewing history is therefore disclosed to Facebook by virtue of the fact that said video forms a basis of the site's URL. *Id.* at ¶ 27.

Plaintiffs are subscribers to Defendant's website and have each watched many videos on the site. *Id.* at ¶¶ 47-48. Plaintiffs also have had Facebook accounts, which contain their own names, continuously since subscribing to cnbc.com. *Id.* at ¶ 49. Each plaintiff has also disclosed their email address to Defendant in order to create their accounts. *Id.* at ¶ 50. Plaintiffs have accessed cnbc.com to watch video content on devices and/or browsers in which they were also logged into their Facebook accounts. *Id.* at ¶ 52.

Plaintiffs allege that when they watched videos on CNBC's website, Defendant disclosed their unique Facebook IDs as well as the full URL of the page visited to Facebook via the Pixel tool without Plaintiffs' consent.

## II. Procedural Background

Plaintiffs Lamb filed the Complaint in this action on June 14, 2023. ECF No. 1. Defendant was then granted an extension of time to file a responsive pleading to the Complaint. ECF No. 7. On December 15, 2023, Defendant filed their motion to dismiss alongside a declaration from defense counsel. ECF Nos. 13, 14 ("Mot."), 15 ("Thomassen Decl."). Plaintiffs filed their opposition on January 16, 2024. ECF No. 16. Plaintiffs then amended their opposition filing on January 19, 2024 in order to "correct an inadvertent factual misstatement." ECF No. 17 ("Opp."). On January 30, 2024, Defendant filed its reply memorandum. ECF No. 24 ("Reply"). After the motion to dismiss was fully briefed, Plaintiffs filed a notice of supplemental authority on March 29, 2024 which Plaintiffs responded to on April 5, 2024. ECF Nos. 25-26.

## LEGAL STANDARD

### I. Rule 12(b)(6) Standard

When considering a 12(b)(6) motion, a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement of relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficiently factual matter accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2 1059, 1067 (2d Cir. 1985). A reviewing court ought not dismiss a complaint where "enough facts to state a claim to relief that is plausible on its face" have been plead." *Twombly*, 550 U.S. at 570. "A claim has facial

plausibility when plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

## II. Stay

"A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id*. at 433-34. Plaintiffs here must demonstrate to the Court that a stay is warranted upon consideration of the following factors: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interest of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Poppel v. Rockefeller University Hospital*, 2019 WL 3334476 at * 2 (S.D.N.Y. 2019) (citing *Landri v. Smith* 2016 WL 828139 at * 2 (S.D.N.Y. 2016). "These factors are to be balanced, with the principal objective being the avoidance of unfair prejudice." *Am. Steamship Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 482 (S.D.N.Y. 2007), a*ff'd in part, vacated in part sub nom. N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010). "In addition, a court may also properly exercise its staying power when a higher court is close to settling an important issue of law bearing on the action," *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012), even where "the issues . . . are

[not] necessarily controlling on the action before the court." *Id.* (quoting *Goldstein v. Time Warner N.Y.C. Cable Grp.*, 3 F. Supp. 2d 423, 438 (S.D.N.Y. 1998)).

### III. Video Privacy Protection Act

The Video Privacy Protection Act ("VPPA") was passed in 1988 after a newspaper published a list of 146 films that the family of Supreme Court nominee Robert Bork had rented from a video store. *See Salazar v. NBA*, 685 F. Supp. 3d 232, 239 (S.D.N.Y. 2023) (citing *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 278 (3d Cir. 2016)); S. Rep. No. 100-599, at 5 (1988). The VPPA creates a private right of action for plaintiffs to sue persons who disclose information about their video-watching habits. *Id.* It provides that "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person[ ]." 18 U.S.C. § 2710(b)(1).

The Act defines the following terms relevant here:

> (1) "consumer" means any renter, purchaser, or subscriber of goods or services from a video tape service provider; ....
> (3) "personally identifiable information" includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider; and
> (4) "video tape service provider" means any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials ....

18 U.S.C. § 2710(a). "In 2013, Congress amended the pre-Internet VPPA to—in the words of amendment sponsor Rep. Bob Goodlatte—'reflect the realities of the 21st century,' but it did not alter any of the VPPA's substantive definitions." *Golden v. NBCUniversal Media, LLC*, No. 22 CIV. 9858 (PAE), 2023 WL 5434378, at *4 (S.D.N.Y. Aug. 23, 2023) (quoting 158 CONG. REC. H6849-01 (daily ed. Dec. 18, 2012)). "To state a claim under § 2710(b), a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any consumer' to 'any person,' (3) the disclosure was made

knowingly, and (4) the disclosure was not authorized by another part of the statute." *Salazar*, 685 F.Supp.3d at 239 (quoting *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023) *appeal withdrawn*, No. 23-412, 2023 WL 4013900 (2d Cir. May 24, 2023)).

## DISCUSSION

Defendant raises two arguments in support of their motion to dismiss. The first is that Plaintiffs have not adequately pleaded that they qualify as "consumers" under the VPPA and, as such, are unable to bring claims under the statute. The second is that Plaintiffs have failed to plausibly plead that CNBC actually disclosed their PII to third parties without users' consent.
VPPA "Consumers"

As stated previously, a VPPA "consumer" is one who rent[s], purchase[s], or subscribe[s]" to "goods or services from a video tape service provider." 18 U.S.C. § 2710(a). Because Plaintiffs do not allege that they rented or purchased goods or services from cnbc.com, in order for their claims to survive, they must qualify as subscribers under the statute. As Defendants point out and as Plaintiffs concede, courts throughout this District have consistently held that the plain meaning of "subscriber" requires an "ongoing commitment or relationship between the user and the entity which owns and operates the [website or] all." *Golden v. NBCUniversal Media, LLC*, No. 22 CIV. 9858 2023 WL 5434378, at *9 (S.D.N.Y. Aug. 23, 2023) (citing *Perry v. Cable News Network, Inc.*, 854 F.3d 1136, 1342 (11th Cir. 2017)); *see also* Am. Opp. at 3-4. Considering the meaning of this word in context, courts throughout this District have held that a VPPA subscriber is one who "subscribes to . . . audio visual materials, not just any products or services from a video tape services provider." *Salazar v. Basketball Ass'n*, No. 1:22-CV-07935 (JLR), 2023 WL 5016968, at *8 (S.D.N.Y. Aug 7, 2024); *see also Golden*, 2023 WL 5434378, at *11 (defining a subscriber as one who subscribes "to audio visual materials, not just any products or services from a video

tape provider") (internal citations omitted); *Lamb v. Forbes Media LLC*, No. 22-CV-06319-ALC, 2023 WL 6318033, at *12 (S.D.N.Y. Sept 28, 2023) (Carter, J.) (same).  What's more, these reviewing courts came to these same conclusions upon essentially the same facts as have been pleaded here—namely, where a plaintiff raises VPPA claims upon the creating an account with an online publication who then utilizes the Facebook Pixel tool.  *See, e.g.*, *id.* at *13 (finding that plaintiffs who "created an account directly on the [defendant's] website" did not qualify as subscribers where "anyone can view videos on defendant's website without the need for a login") (citing *Gardener v. MeTV*, No. 22 CV 5963, 2023 U.S. Dist. LEXIS 115810, 2023 WL 4365901, at *4 (N.D. Ill. July 6, 2023)) (cleaned up).  All this, taken together, strongly supports a finding that Plaintiffs have failed to plausibly plead a claim under the VPPA.

**IV. Stay**

Nevertheless, as Plaintiffs point out, a stay of this case is warranted given the Second Circuit's current consideration of *Salazar v. National Basketball Association*, 23-1147 (2d Cir.). The operative legal question the Circuit will consider in *Salazar* is the same legal question centrally at issue here—whether plaintiffs who created accounts on sites where such accounts were not necessary to view video content qualify as "subscribers" under the VPPA.  Case No. 23-1147, Dkt. 24-3 Form C, Addendum B (2d Cir.).  As this Court noted in its prior opinion staying *Lamb v. Forbes*, a similarly-situated VPPA action, "[t]he Second Circuit's decision in *Salazar* 'could contain guidance that would allow this litigation to proceed on a reasonable and efficient basis.'"  No. 1:22-cv-06319-ALC, 2024 U.S. Dist. LEXIS 59355, at *6 (S.D.N.Y. Apr. 1, 2024) (citing *Loftus v. Signpost Inc.*, 464 F. Supp. 3d 524, 527 (S.D.N.Y. 2020)).

The grant of a stay would not unduly prejudice the Defendant as this case is rather undeveloped and no discovery has been exchanged.  Indeed, Defendants do not reference any

substantial burden a stay would impose. A stay is also in the interests of the court as it would "promot[e] judicial efficiency and minimize[e] the possibility of conflicts between different courts." *Catskill Mts. Chapter of Trout Unlimited, Inc. v. United States EPA*, 630 F. Supp. 2d 295, 297 (S.D.N.Y. 2009).

## CONCLUSION

For the foregoing reasons, Defendant's motion pursuant to Rule 12(b)(6) is **DENIED without prejudice** and Plaintiffs' request for a stay is **GRANTED**. The Clerk of the Court is respectfully directed to terminate ECF No. 13. The Parties are also **ORDERED** to file a joint status report within seven days of the issuance of the Second Circuit's decision in *Salazar* informing the Court of the manner in which the Parties would like to proceed.

**SO ORDERED.**

Dated:   **August 29, 2024**
         **New York, New York**

                                                **ANDREW L. CARTER, JR.**
                                                **United States District Judge**